UNITED STATES DISTRICT COURT    Index No.:
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GERSON COUNOU,

       Plaintiff,        **COMPLAINT**

    -against-

ABM HEALTHCARE SUPPORT SERVICES, INC.,  Plaintiff Demands a Trial
                 By Jury

       Defendant.
------------------------------------------------------------------------X

Plaintiff GERSON COUNOU, by and through his attorneys, PHILLIPS & ASSOCIATES, PLLC,

hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, as

   amended, 42 U.S.C. §2000e et. Seq. ("Title VII"), and to remedy violations of the New York

   Executive Law and the Administrative Code of the City of New York, based upon the

   supplemental jurisdiction of this Court pursuant to *Gibb*, 383 U.S. 715 (1966) and 28 U.S.C.

   §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being

   harassed and discriminated against by his employer on the basis of his national origin and race,

   together with creating a hostile work environment, retaliation, and unlawful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §1981; 42 U.S.C. §2000e et. Seq.; 28 U.S.C.

   §1331 and §1343 and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. The Court also has jurisdiction pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

5. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York.  28 U.S.C. §1391(b).

6. On or about January 25, 2017, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC").

7. On or about June 6, 2017, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

8. This action is being brought within ninety (90) days of the Notice of Right to Sue letter.

## PARTIES

9. Plaintiff GERSON COUNOU (herein also referred to as "COUNOU") is a black, Haitian American resident of the State of New York, County of Kings.

10. At all times material, Defendant ABM HEALTHCARE SUPPORT SERVICES, INC. (herein also referred to as "ABM HEALTHCARE") was and is a foreign business corporation duly incorporated under the laws of the State of Michigan.

11. At all times material, Defendant ABM HEALTHCARE was and is a foreign business corporation authorized to conduct business in the State of New York.

12. At all times material, Defendant ABM HEALTHCARE was and is a foreign business corporation which does conduct business in the State of New York.

13. ABM HEALTHCARE manages support services, including valet services, for various medical facilities throughout the United States and maintains its principal place of business in Michigan.

14. At all times material, Plaintiff was an employee of Defendant ABM HEALTHCARE.

## MATERIAL FACTS

15. On or about October 14, 2015, Plaintiff began working for Defendant ABM HEALTHCARE as a "Valet Attendant" at Long Island Jewish Medical Center in Queens, New York ("LIJ").

16. As a result of Plaintiff's exemplary work performance, Plaintiff quickly rose within the ranks of the valet department.   In or around December 2015, Plaintiff was promoted to "Lead Supervisor" and again promoted to "Patient Experience Director/Area Manager" on or about May 4, 2016.

17. As Patient Experience Director/Area Manager, Plaintiff was responsible for managing approximately 40 employees, including supervisors, valets, and cashiers.  Plaintiff was tasked with overhauling the valet department which was plagued by misconduct and mismanagement. By way of example, prior to Plaintiff's promotion to Patient Experience Director/Area Manager, employees were constantly stealing money from patients' vehicles, stealing time by clocking in and leaving the premises, not showing up for their shift, or otherwise creating disorder.

18. Plaintiff was an exceptional employee and often received praise from patients and staff. However, Plaintiff was met with significant resistance and hostility from several staff members, including Puerto Rican employees who refused to take orders from Plaintiff because of his race and national origin.  Many of the Puerto Rican employees would undermine Plaintiff, refuse to follow his directives, and blatantly disrespect Plaintiff.

19. Instead of communicating with Plaintiff who was their direct supervisor, Puerto Rican employees would circumvent him and speak to Plaintiff's supervisor, Robert Aponte ("Aponte"), who is also Puerto Rican.  Rather than reprimanding employees for their insubordination, Aponte would either ignore or condone the discriminatory conduct.

20. By way of example, in or around December 2016, Plaintiff asked his assistant, Amanda Alicea ("Alicea"), who is Puerto Rican, to move her car which was parked in the fire zone near the valet office.  In response, Alicea stated that she had been parking there for years and shouted, **"I don't know what the fuck is wrong with you. Telling me to move my car!"**  Plaintiff reported Alicea's conduct to Aponte, however, the insubordination and discriminatory conduct went unabated.

21. On another occasion, Plaintiff asked Alicea to attend a collaboration meeting with him.  Alicea stated that she did not want to attend the meeting.  When Plaintiff asked why, Alicea told Plaintiff, **"You are disgusting."**  Plaintiff promptly contacted Aponte to discuss the matter, however, Aponte ignored Plaintiff.

22. Puerto Rican employees would also circumvent Plaintiff and communicate with Aponte regarding the work schedule to get preferential treatment, irrespective of the fact that Plaintiff was solely in charge of valet scheduling at LIJ.

23. As yet another example of Defendant ABM HEALTHCARE's discriminatory treatment, in or around the fall of 2016, Aponte hired Steven Vargas ("Vargas"), a Puerto Rican employee who was previously terminated by Defendant for poor performance.  Upon his rehire, Vargas immediately ask Plaintiff if he (Vargas) could be stationed at the Cohen's Children's wing because it was a desirable post where valets received more monetary tips.  Plaintiff told Vargas that he could not move him there because the post was already assigned to another supervisor,

4

Carlo Pierre. **Despite Plaintiff's directive, Aponte abruptly removed Carlo Pierre, a black, Haitian valet supervisor, from the Cohen Children's wing and replaced him with Vargas.** Aponte did not give Plaintiff any explanation for the substitution other than to say that Vargas was "a good fit" for the post.

24. On or about December 29, 2016, Christian Delgado ("Delgado"), a Puerto Rican valet attendant, was working at the main entrance. Plaintiff asked Delgado to cover a shift in the garage for two hours because another valet had called out of work. Delgado shouted, "No I am not fucking going" and repeatedly cursed at Plaintiff. As a result, Plaintiff told Delgado that he should punch out and go home. Delgado then immediately began to shout, **"Black Ass Nigger,"** in the front of the staff and a patient that Plaintiff was assisting. **Delgado continued to shout the racial slur until Plaintiff called security.**

25. On or about that same day, Plaintiff emailed a letter to Defendant's Human Resources ("HR") Manager, Linda D'Olympio ("D'Olympio"), detailing employee misconduct within the valet department, including the escalating racism and threatening behavior.

26. On or about December 30, 2016, Plaintiff also complained to Aponte about Delgado's actions on the prior day, specifically the fact that Delgado referred to Plaintiff as **"Black Ass Nigger."** Aponte simply laughed and said, "You must have really pissed him off." Rather than admonishing Delgado's racist conduct, Aponte, in an accusatory manner, asked Plaintiff why he assigned Delgado to the garage post, as if Plaintiff was responsible for eliciting the racial slurs.

27. On or about January 6, 2017, without any substantive response from HR, Plaintiff sent a second letter to D'Olympio further detailing Aponte's undermining tactics and the escalating threats and misconduct by staff, including the fact that Plaintiff was followed at work by an unknown

5

driver.  Plaintiff even attached a copy of a schedule which had the words, "**Gerson Is A Bitch ass Bitch**" written across it.

28. On or about January 18, 2017, Plaintiff's Regional Manager, Gary Locascio ("Locascio"), visited Plaintiff at LIJ and suspended Plaintiff pursuant to HR's directive.  Locascio told Plaintiff that he (Plaintiff) would remain on paid suspension until the investigation into Plaintiff's complaints were complete.  When Plaintiff asked Locascio why he was being suspended, Locascio simply stated that Plaintiff could not be on-site during the investigation and that Plaintiff was not permitted to communicate with other employees.  Locascio ordered Plaintiff to turn over his work phone and was told that his access would be removed from the computer system.  Plaintiff was further warned that if he contacted any employee, he would be terminated.

29. During the same conversation, Plaintiff told Locascio that he had a doctor's appointment at LIJ that week for a follow-up cardiac diagnostic test.  Locascio ordered Plaintiff to cancel the appointment because Plaintiff was not allowed "on-site."

30. On or about January 19, 2017, Plaintiff had a conversation with Carlo Pierre.  Pierre told Plaintiff that HR had interviewed him and that the tone and manner of questioning suggested that Defendant ABM HEALTHCARE was trying to "dig" for negative information about Plaintiff.  Defendant was trying to create a pretextual paper trail to terminate Plaintiff.

31. On or about January 20, 2017, Plaintiff met with D'Olympio at a hotel in Manhasset, New York.  Plaintiff reiterated that he was being subjected to a hostile work environment, including racial slurs, threats, insubordination, and undermining tactics by management.  In retaliation, and in order to create pretextual reasons to terminate Plaintiff, D'Olympio brought up an accusation *from months prior* whereby a valet had accused Plaintiff of pushing her after she

put her hands on a patient.  Plaintiff unequivocally denied the baseless accusation and noted that the employee had been terminated *months ago* for stealing time from the company.

32. D'Olympio concluded the meeting by stating that she would contact Plaintiff regarding the results of the investigation into his complaints.  D'Olympio did not provide a time frame for the conclusion of the investigation and did not provide Plaintiff with an explanation as to why he continued to be suspended during the pendency of the investigation.

33. On or about January 25, 2017, as a result of the discrimination and retaliatory suspension, Plaintiff filed a charge of discrimination with the EEOC.

34. Over the next five months, Plaintiff remained on paid suspension while HR supposedly investigated Plaintiff's discrimination complaints.  During this period, Defendant did not request any additional information from Plaintiff or conduct a single follow-up interview of Plaintiff.

35. Rather than genuinely investigating Plaintiff's complaints, Defendant continued to keep Plaintiff on a prolonged suspension because of his complaints to HR and his subsequent EEOC filing.  Defendant never had any intention of restoring Plaintiff to his position.

36. On or about June 6, 2017, Plaintiff received his Right to Sue letter from the EEOC, thereby allowing him to pursue his Title VII claims in federal court.  A copy of Plaintiff's Right to Sue letter was simultaneously sent to D'Olympio.

37. Three weeks later, on or about June 27, 2017, Defendant ABM HEALTHCARE terminated Plaintiff.

38. Defendant terminated Plaintiff because he obtained his EEOC Right to Sue letter.

39. Defendant terminated Plaintiff because he complained of racist behavior and because he exercised his protected rights.

40. After nearly six months of allegedly investigating Plaintiff's complaint, D'Olympio told Plaintiff that Defendant ABM HEALTHCARE had concluded its investigation and decided to terminate Plaintiff. D'Olympio did not provide any explanation for the termination.

41. On or about July 10, 2017, D'Olympio emailed Plaintiff a letter confirming his termination. In her letter, D'Olympio claimed *for the first time* that Plaintiff was "put on paid suspension while ABM investigated [Plaintiff's] complaints *and complaints against [Plaintiff].*" Prior to this correspondence, D'Olympio had specifically told Plaintiff that he was put on suspension for the sole purpose of investigating Plaintiff's complaints to HR.

42. In her correspondence, D'Olympio further stated that Plaintiff was being terminated based on "employee complaints" against him. However, D'Olympio did not identify the basis of the "complaints" against him or give him an opportunity to respond to the allegations.

43. Defendant terminated Plaintiff because of his complaints of race discrimination.

44. On or about July 21, 2017, Plaintiff's attorney sent an offer of settlement with a draft complaint to Defendant ABM HEALTHCARE.

45. In or around early August 2017, the New York State Department of Labor informed Plaintiff that Defendant ABM HEALTHCARE contested his claim for unemployment benefits.

46. Defendant ABM HEALTHCARE falsely contested Plaintiff's claim for unemployment benefits in retaliation for his discrimination claims and in retaliation for Plaintiff exercising his protected rights.

47. Defendant would not have retaliated against Plaintiff but for his opposition to Defendant's unlawful employment practices.

48. Defendant would not have harassed and discriminated against Plaintiff but for his race and national origin.

8

49. As a result of Defendant's actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

50. As a result of Defendant's discriminatory and intolerable treatment of Plaintiff, he suffered and continues to suffer severe emotional distress and physical ailments.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

52. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demand Punitive Damages as against the Defendant.

## AS A FIRST CAUSE OF ACTION
## UNDER FEDERAL LAW
## 42 U.S.C. SECTION 1981

53. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

54. 42 U.S.C. Section 1981 states in relevant part as follows:

   a. Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

   b. "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

55. Plaintiff was discriminated against because of his race as provided under 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

56. Plaintiff also claims retaliation under 42 U.S.C. Section 1981.

## AS A SECOND CAUSE OF ACTION
### UNDER TITLE VII
### DISCRIMINATION

57. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

58. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42 U.S.C. Section 1981, for relief based upon the unlawful employment practices of the above-named Defendant. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race and national origin.

59. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his race and national origin, together with creating a hostile work environment and unlawful termination.

## AS A THIRD CAUSE OF ACTION
### UNDER TITLE VII
### RETALIATION

60. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

61. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

62. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendant.

**AS A FOURTH CAUSE OF ACTION
UNDER NEW YORK STATE LAW
DISCRIMINATION**

63. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

64. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

65. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his national origin and race, together with creating a hostile work environment and unlawful termination.

66. Plaintiff hereby make a claim against Defendant under all of the applicable paragraphs of Executive Law Section 296.

## AS A FIFTH CAUSE OF ACTION
## UNDER NEW YORK STATE LAW
## <u>RETALIATION</u>

67. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

69. Defendant engaged in unlawful employment practices prohibited by the New York State Executive Law by discharging, retaliating and otherwise discriminating against the Plaintiff because of his opposition to Defendant's unlawful employment practices.

## AS A SIXTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## <u>DISCRIMINATION</u>

70. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice:  "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

72. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working

conditions, and otherwise discriminating against the Plaintiff because of his national origin and race, together with creating a hostile work environment and unlawful termination.

## AS A SEVENTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## RETALIATION

73. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

74. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

75. Defendant engaged in unlawful employment practices by discharging, retaliating and otherwise discriminating against the Plaintiff because of his opposition to Defendant's unlawful employment practices.

**WHEREFORE**, Plaintiff respectfully request a judgment against the Defendant:

A. Declaring that the Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §1981, Title VII, the New York City Administrative Code, and the New York Executive Law; and that the Defendant harassed and discriminated against Plaintiff on the basis of his national origin and race, together with creating a hostile work environment, retaliation and unlawful termination.

B. Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay, and front pay, resulting from Defendant's unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to reputation;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendant, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
          August 24, 2017

PHILLIPS & ASSOCIATES, PLLC
ATTORNEYS AT LAW

By: _____
Erica L. Shnayder, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, NY 10004
Tel: 212-248-7431
Fax: 212-901-2107

14